# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DIANE FIELD and JAKE HOFFMAN, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | 17-cv-02044 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| HOUSING AUTHORITY OF COOK | ) | |
| COUNTY and ILLINOIS DEPARTMENT | ) | |
| OF HUMAN RIGHTS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Diane Field and Jake Hoffman have sued the Housing Authority of Cook County ("HACC") and the Illinois Department of Human Rights ("IDHR") for disability discrimination. In their Amended Complaint, Plaintiffs bring claims against HACC under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and § 504 of the Rehabilitation Act ("§ 504"), 29 U.S.C. § 794, and against IDHR for violating the ADA, § 504, and a prior federal court injunction.

IDHR moves to dismiss Plaintiffs' Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and requests the Court to strike Plaintiffs' requests for injunctive, declaratory and punitive relief. For the reasons stated herein, IDHR's motions to dismiss and strike are granted in part and denied in part.

## Factual Background[1]

### A.    Participation in HACC Programs

Diane Field and her 21-year-old son, Jake Hoffman, are both disabled.  Field suffers from Asperger's Syndrome, Post-Traumatic Stress Disorder ("PTSD"), and a mild traumatic brain injury due to domestic violence.  Am. Compl. ¶¶ 3, 12–14, ECF No. 24.  As a result, she faces communication and processing difficulties and often requires assistance communicating.  *Id.* ¶¶ 14–15.  Hoffman's disabilities include PTSD, a mild traumatic brain injury, aspects of Asperger's Syndrome, and auditory processing delays, among others.  *Id.* ¶¶ 17–18.  Field receives Social Security benefits from the federal government for her disabilities; Hoffman received Social Security benefits for his disabilities until August 2016, when he enlisted in the military.  *Id.* ¶¶ 16, 21.

Field receives a housing voucher from HACC under the federal Housing Choice Voucher Program, which provides her with rental assistance as a low-income individual in Cook County, Illinois.[2]  *Id.* ¶¶ 28–29, 31.  The number of family members sharing a household determines the size of a voucher, and Hoffman was listed on Field's voucher until June 2015, which qualified Field and Hoffman for a two-bedroom home in Lemont, Illinois.  *Id.* ¶¶ 6, 12, 30, 153, 162.  Field also

---

[1]    The following facts are taken from Plaintiffs' amended complaint and are accepted as true on review of Defendant's motion to dismiss.  *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

[2]    Pursuant to the Housing Choice Voucher Program, both HACC and the participating family make rent payments to the housing unit owner.  Am. Compl. ¶ 31.  HACC calculates the amount of each monthly rental assistance payment based on the family's household income.  *Id.* ¶¶ 62, 67–69.

participates in two other HACC programs: the Home Ownership Program, which helps low-income families purchase a home, and the Family Self-Sufficiency Program, which provides education and job skills. *Id.* ¶¶ 32–34.

In early 2015, Field arranged for Hoffman to attend Brehm Preparatory School ("Brehm Prep"), a residential therapeutic high school in Carbondale, Illinois, that was better equipped to accommodate Hoffman's disabilities than his previous school. *Id.* ¶¶ 37–40. Field contacted HACC repeatedly in June 2015 regarding her Housing Voucher Program renewal paperwork, expressing concern about how to report Hoffman's income[3] and whether Hoffman should remain on Field's housing voucher while he resided at Brehm Prep. *Id.* ¶¶ 57–62. When requesting guidance from HACC, Field explained that she often required assistance completing paperwork because of her communication disability. *Id.* ¶¶ 53, 56–61.

In a meeting around June 10, 2015, HACC manager Angela Francis informed Field that if Hoffman remained on Field's housing voucher, his income would factor in to calculate HACC's monthly rental assistance payment, even though Hoffman required his disability income to live at Brehm Prep. *Id.* ¶¶ 61–62. Field therefore elected to remove Hoffman from her voucher with the understanding that she could reinstate Hoffman when he graduated. *Id.* ¶ 63.

In advance of Hoffman's graduation, Field contacted HACC in early 2016 regarding reinstating Hoffman on her housing voucher. *Id.* ¶ 83. Field had numerous communications with HACC staff about the matter. *Id.* ¶ 85. In an email to HACC

---

[3]     Presumably, Field refers to Hoffman's Social Security income. *See* Am. Compl. ¶ 58.

caseworker Phyllis Johnson in February 2016, Field asked to reinstate Hoffman, warned that she would file a complaint with IDHR or the Department of Housing and Urban Development ("HUD") if necessary for Hoffman to be reinstated, and requested that her speech therapist be included in any future conversations to assist with her communication processing issues. *Id.* ¶¶ 83, 87, 111, 120.

Field and Johnson also spoke by phone, during which Field requested to include her speech therapist in the conversation, but Johnson refused, advising Field that the therapist could only participate in in-person meetings. *Id.* ¶¶ 112–16.

In the end, Johnson refused to add Hoffman back to Field's voucher, citing an HACC administrative rule prohibiting reinstatement of a family member once that individual was removed. *Id.* ¶ 88. During this call, Johnson also raised her voice, told Field that it was her turn to listen, and warned Field to not threaten Johnson. *Id.* ¶ 121. Field was frightened by Johnson's behavior. *Id.* ¶ 122. She worried that if she filed a complaint with HUD or IDHR, HACC could disqualify Field from the Housing Choice Voucher Program altogether.[4] *Id.*

That same day, Field contacted HACC supervisor Sheryl Seiling about her conversation with Johnson, and again asked to add Hoffman back to her voucher. *Id.* ¶¶ 89, 123. Her request was denied. *Id.* ¶ 90. According to Field, HACC did not engage in any serious, case-by-case consideration of Field's request, which Field

---

[4]     Field was concerned that Johnson interpreted Field's willingness to file a complaint with HUD or IDHR as a threat, and according to Field, threatening an HACC caseworker is grounds for termination from HACC programs like the Housing Choice Voucher Program. Am. Compl. ¶ 121.

contends is required by HACC's written policies for handling a participant's request for disability-based rule exceptions. *Id.* ¶¶ 88, 90–93, 96–101.

## B. IDHR's Investigation

Field subsequently filed a complaint with IDHR in February 2016 detailing HACC's refusal to reinstate Hoffman and alleging that Johnson had threatened and intimidated her. *Id.* ¶¶ 124, 168, 80. Per the Fair Housing Assistance Program, Field's complaint was cross-filed with HUD, but IDHR was responsible for the investigation.[5] *Id.* ¶¶ 124–25, 168.

IDHR began investigating Field's charge against HACC, and in May 2016, IDHR relayed a conditional offer from HACC to Field, in which HACC agreed to restore Hoffman to Field's voucher if Field paid back-rent. *Id.* ¶¶ 132–34. Field declined this offer, because she was concerned that incurring a debt to HACC would jeopardize her ability to purchase a home through the Home Ownership Program.[6] *Id.* ¶¶ 137–40.

Between May and September 2016, Field continued to seek Hoffman's reinstatement to her housing voucher without having to pay back-rent. *Id.* ¶ 142. In September 2016, HACC offered to restore Hoffman without requiring back-rent, but

---

[5]     Under the Fair Housing Assistance Program, HUD established an intergovernmental enforcement partnership with IDHR in 2002 that permits HUD to refer discriminatory housing complaints in Illinois to IDHR for investigation. *Fair Housing Assistance Program*, U.S. Dep't of Hous. & Urban Dev., https://www.hud.gov/program_offices/fair_housing_equal _opp/partners/FHAP (last visited May 27, 2018).

[6]     To remain eligible for the Home Ownership Program, a participant must not owe rent or other debts to HACC. Am. Compl. ¶¶ 139–40. Field was therefore concerned that accepting HACC's initial offer, which would have put her in debt to HACC, would have disqualified her from the Home Ownership Program. *Id.* ¶¶ 138, 140.

Hoffman had already graduated from Brehm Prep, and faced with the prospect of homelessness, had chosen to enlist in the military. *Id.* ¶¶ 144–50.

Over the next several months of the investigation, IDHR took numerous actions to which Field objects. *Id.* ¶¶ 8, 172. First, the HACC staff claimed that they had in fact warned Field that once she removed Hoffman from her voucher, he could not be reinstated. *Id.* ¶ 175. Although Field informed IDHR that the statement was false, and IDHR staff investigator Stan Moen did not produce any proof beyond HACC's word that it had informed Field of the administrative rule, Moen advised Field that if she continued to pursue the investigation, her complaint would be dismissed as invalid, presumably on the grounds that HACC had warned her of the consequences of removing Hoffman from her voucher. *Id.* ¶¶ 176–79.

Second, another IDHR employee, Daniel Padilla, told Field that she could not prove her allegations that Johnson had threatened and intimidated her on a phone call. *Id.* ¶ 181. Padilla advised her to remove these allegations from her charge against HACC. *Id.* ¶¶ 8, 180–81. Field followed Padilla's advice and did not include the intimidation allegations in her final submitted charge. *Id.*

Third, Field requested that her communication aide, Suzy Woods, be allowed to participate in conversations between Field and IDHR to help Field understand the investigation's status. *Id.* ¶ 198. IDHR initially allowed this practice, but in one instance, Moen refused to allow Woods to join a phone call, instead insisting that Woods email him and state that she was permitted to speak on Field's behalf. *Id.* ¶¶ 8, 199. Subsequently, IDHR communicated directly with Woods on Field's behalf while excluding Field herself from direct communications. *Id.* ¶¶ 8, 199–202, 206.

IDHR later acknowledged that the practice of requiring Field's advocate to speak on her behalf, instead of allowing both to participate, deviated from IDHR policy. *Id.* ¶¶ 203–04. IDHR also denied Field's request to speak with IDHR's ADA coordinator to explain why her disability necessitated the assistance of a communication aide. *Id.* ¶¶ 207–08.

Dissatisfied with the length of time IDHR was taking to complete its investigation,[7] Field filed the instant lawsuit against IDHR and HACC on March 15, 2017. *Id.* ¶ 194. Three months later, on June 20, 2017, IDHR completed its final investigative report, which found no cause to indicate that HACC had violated Field's or Hoffman's rights. *Id.* ¶¶ 209–10. The report found that Field "did not ask for a reasonable accommodation" and instead merely "sought clarification as to if it were possible or not." *Id.* ¶¶ 102, 212–13. The report further stated that even if she had requested a reasonable accommodation, it "was not medically necessary." *Id.* ¶¶ 102, 217. According to Plaintiffs, the final report is erroneous because it disregards substantial evidence in IDHR's case file. *Id.* ¶¶ 214–16, 218. Field and Hoffman then filed the Amended Complaint on November 16, 2017.

## Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). To

---

[7]  State regulations require IDHR to complete an investigation within 365 days of the charge filing date. *See* 775 Ill. Comp. Stat. Ann. 5/7A-102(G). IDHR did not complete its investigation until June 2017, seventeen months after the initial administrative charge was filed. *See* Am. Compl. ¶¶ 185–92.

survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint and must draw all possible inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

## Analysis

Plaintiffs claim that IDHR discriminated against Field on the basis of disability in violation of the ADA (Counts IX and XIII) and § 504 of the Rehabilitation Act (Counts X and XIV), retaliated against both Field and Hoffman for asserting their rights in violation of the ADA (Count XI) and § 504 (Count XII), and made impermissible credibility determinations in violation of a federal court injunction (Count XV). *See generally* Am. Compl. ¶¶ 293–350. Plaintiffs ask the Court to grant declaratory relief, compensatory and punitive damages, reasonable attorneys' fees

and costs, and injunctive relief. *Id.* at 55–56. IDHR now moves both to dismiss all of Plaintiffs' claims against it (Counts IX through XV) for failure to state a claim under Rule 12(b)(6) and to strike parts of Plaintiffs' prayer for relief.

## I.    Counts IX–XIV as to Hoffman

IDHR argues that Hoffman fails to state a claim in Counts IX through XIV because he never pursued any benefits from IDHR. Def.'s Mem. Supp. at 6–7, 9, ECF No. 42. Hoffman does not challenge the dismissal of Counts IX through XIV. *See* Pls.' Resp. at 1, ECF No. 50. The Court accordingly grants IDHR's motion to dismiss Counts IX through XIV as to Hoffman.

## II.    Counts IX–XIV as to Field

Because the relevant provisions and implementing regulations of the Rehabilitation Act and the ADA are "materially identical," they are typically interpreted and applied in a consistent manner.[8] *A.H. ex rel. Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) (citing *Steimel v. Wernert*, 823 F.3d 902, 909 (7th Cir. 2016)). The Court's analysis of Field's ADA claims therefore applies equally to her § 504 claims, as both are supported by the same factual allegations. *See Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004); *Holmes v. Godinez*, 311 F.R.D. 177, 224 (N.D. Ill. 2015).

---

[8]    The only notable difference between the ADA and the Rehabilitation Act is that a plaintiff alleging a violation of § 504 must plead that the relevant state agency receives federal funds. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citing *Jaros v. Ill. Dep't of Corr.,* 684 F.3d 667, 671 (7th Cir. 2012)). The parties do not dispute that IDHR receives federal funding and is therefore subject to the Rehabilitation Act. Am. Compl. ¶ 7.

## A.     Claims for Denial of Reasonable Accommodation

Field alleges that IDHR denied her a reasonable accommodation in violation of Title II of the ADA, 42 U.S.C. § 12132 (Counts IX and XIII) and § 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Counts X and XIV). [9]

The ADA dictates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. The ADA's implementing regulations require a public entity to "make reasonable modifications in policies, practices, or procedures where the modifications are necessary to avoid discrimination on the basis of disability."[10] 28 C.F.R. § 35.130(b)(7)(i). For example, a public entity has an affirmative duty to "take appropriate steps to ensure that communications with applicants [and] participants . . . with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a).

---

[9]     Field brings separate claims for "denial of equal access" (Counts IX and X) and "denial of reasonable accommodation" (Counts XIII and XIV). But all four counts are based on the same factual allegations, *see* Pls.' Resp. at 10 n.7, and all allege that by denying reasonable accommodation, Field was denied equal access to IDHR's programs, *see* Am. Compl. ¶¶ 297–99, 306–08, 324–29, 336–41. The Court therefore construes all four counts as bringing claims for denial of reasonable accommodation. *See Holzmueller,* 881 F.3d at 592–93 (holding that disability discrimination under the Rehabilitation Act and the ADA can be established through showing (1) intentional discrimination; (2) failure to provide reasonable accommodation; or (3) disparate impact).

[10]     While the Rehabilitation Act lacks equivalent language expressly requiring accommodation, "the Supreme Court has recognized a duty to provide reasonable accommodation in Section 504." *Holzmueller*, 881 F.3d at 592 (citing *Alexander*, 469 U.S. at 301).

To prove disability discrimination under the ADA and § 504, "a plaintiff must show: (1) that [s]he suffers from a disability, (2) that [s]he is qualified to participate in the program in question, and (3) [s]he was either excluded from participating in or denied the benefit of that program based on [her] disability." *Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015); *see also* 29 U.S.C. § 794; 42 U.S.C. § 12132. The Seventh Circuit recognizes that "refusing to make reasonable accommodations is tantamount to denying access." *Jaros v. Ill. Dep't of Corr.,* 684 F.3d 667, 672 (7th Cir. 2012). A plaintiff can therefore prove the third prong—that she was excluded from participation—by showing that the defendant refused to provide a reasonable accommodation. *See Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006); *see also Harper v. Dart*, No. 14 C 01237, 2015 WL 6407577, at *4 (N.D. Ill. Oct. 21, 2015) (citing *Jaros,* 684 F.3d at 672) ("One can 'deny access' by failing to reasonably accommodate a plaintiff's disability.").

Field alleges that she requested a reasonable accommodation by asking IDHR to include her communication aide, Suzy Woods, in conversations between IDHR and Field, a practice that had been previously permitted. *See* Am. Compl. ¶¶ 198, 214–16, 325–26, 337–38. By denying this accommodation and forcing Woods to speak on Field's behalf, while excluding Field herself, Field claims that IDHR denied her equal access to participate in IDHR's investigation. *See* Am. Compl. ¶¶ 298–99, 307–08.

IDHR makes three different arguments in its attack of Field's reasonable accommodation claims. First, it contends that Field fails to state a claim under Title

III of the ADA, 42 U.S.C. § 12182.[11]  Def.'s Mem. Supp. at 7.  But Field makes no claims under Title III, so these arguments are irrelevant.

IDHR next asserts that Field was not qualified for the benefits she sought from IDHR.[12]  *Id.* at 6.  In support of this statement, IDHR refers only to unidentified "communications" attached to the original complaint.  *See id.*  But because those "communications" were not attached to the Amended Complaint, nor were they referenced by it, they cannot serve as the basis for a motion to dismiss.  *See Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204–05 (7th Cir. 1998) (stating that an amended complaint supersedes a prior pleading, and matters not restated in the amended complaint cannot be considered on a motion to dismiss).

Finally, IDHR argues that Field cannot state a claim under the ADA or § 504 because IDHR did not deny her any benefits.  Def.'s Mem. Supp. at 6–7.  Specifically, IDHR asserts that by allowing Field's aide, Suzy Woods, to communicate with IDHR on behalf of Field, even while excluding Field herself, IDHR had granted an accommodation and was, in fact, complying with its statutory obligation to ensure equally effective communications under 28 C.F.R. § 35.160(a).  *Id.* at 7.  Field disagrees, contending that IDHR's so-called "accommodation"—excluding Field from conversations and instead communicating directly with Field's aide—contravened

---

[11]     IDHR makes this argument only as to Counts XIII and XIV.  *See* Def.'s Mem. Supp. at 7.

[12]     It is unclear whether IDHR refers to benefits Field sought from HACC or IDHR, as the statement is ambiguous in both IDHR's Memorandum in Support of the Motion to Dismiss and in IDHR's Reply.  *See* Def.'s Mem. Supp. at 6; Def.'s Reply Supp. at 2, ECF No. 51.  The Court construes the statement to refer to benefits from IDHR because that is the only interpretation relevant to the claims IDHR seeks to dismiss.

the purpose of the ADA's requirement of equally effective communication, which aims to make it easier for people with disabilities to fully participate in public programs like IDHR's investigation. *See* Pls.' Resp. at 5–6.

In support of its arguments, IDHR invokes 28 C.F.R. § 35.160(c)(2)(ii). This regulation permits a public entity to rely on an "adult accompanying an individual with a disability to interpret or facilitate communication" only where "the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances." 28 C.F.R. § 35.160(c)(2)(ii). But § 35.160(c) does not expressly permit IDHR to *exclude* a disabled individual from communications, and thus cannot, on its own, sanction IDHR's actions. *See id.* In addition, the regulation refers to an "*accompanying* adult," which implies that the individual with a disability is included in the relevant communications. *See id.* (emphasis added). Furthermore, where an individual with a disability expressly requests that IDHR allow her to participate along with the facilitating adult during any communications, to deny such a request could hardly be "appropriate under the circumstances."

What is more, IDHR asserts that it was only required to grant "accommodations that were reasonable, not [Field's] ideal or even preferred accommodations," *see* Def.'s Reply at 3, but whether IDHR's alternative accommodation was reasonable is "a question of fact not suitable for determination on a motion to dismiss." *Stuckey v. City of Naperville*, No. 97 C 7037, 1998 WL 173298, at *5 (N.D. Ill. Apr. 7, 1998); *see also Dadian v. Vill. of Wilmette,* 269 F.3d

13

831, 838 (7th Cir. 2001) (reasonableness of a requested accommodation is "highly fact-specific").

In short, Field has adequately alleged that IDHR denied her a reasonable accommodation in violation of the ADA and § 504. IDHR's motion to dismiss Counts IX, X, XIII and XIV is therefore denied as to Field.

## B. Claims for Retaliation and Intimidation

In Counts XI and XII, Field alleges that IDHR retaliated against and intimidated her in violation of the ADA and § 504. Am. Compl. ¶¶ 312–13, 317–18. Under the ADA, it is unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge," or to "coerce, intimidate, threaten, or interfere with any individual in the exercise" of "any right granted or protected by [the ADA]." *Id.* §§ 12203(a), (b).

To state a claim of retaliation under the ADA and § 504, a plaintiff must allege that (1) she engaged in a protected activity under the ADA or § 504, and (2) she suffered an adverse action as a result of that activity. *Curtis v. City of Chi.*, No. 16 C 8042, 2018 WL 1316723, at *4 (N.D. Ill. Mar. 14, 2018).

IDHR does not dispute that Field engaged in activity protected by the ADA and § 504. Am. Compl. ¶¶ 8, 194, 198–202. Instead, IDHR argues that no adverse action occurred as a result of that protected activity. Def.'s Mem. Supp. at 8–9. IDHR further contends that even if Field properly stated a retaliation claim under the ADA in Count XI, the § 504 claim in Count XII must be dismissed because the provision does not permit claims for retaliation outside of an employment context. *Id.* at 8.

### i. Adverse Action

For the purpose of a retaliation claim, a plaintiff suffers an adverse action if, as a result of engaging in protected activity, a defendant takes action that "would have dissuaded a reasonable [person] from engaging in protected activity." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901–02 (7th Cir. 2018) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The "test uses an objective standard, based on how a reasonable [person] might react," and while it disregards the "personal *feelings* of [an] individual [plaintiff], the inquiry does account for the personal *circumstances*" of such a plaintiff. *Id.* at 902 (emphasis in original).

Here, Field alleges numerous adverse actions, including that IDHR (a) did not conduct a fair and neutral investigation, Am. Compl. ¶¶ 175–79, 182, 211–18; (b) steered Field to withdraw her charge against HACC, *id.* ¶¶ 176, 183; (c) encouraged Field to settle her case against HACC under terms favorable to HACC and detrimental to Field, *id.* ¶¶ 134–35, 182; (d) prevented Field from including allegations of Johnson's threats and intimidation in Field's perfected charge against HACC, *id.* ¶¶ 180–81; and (e) conducted an unnecessarily prolonged investigation, *id.* ¶¶ 184–92, 195.

While the complaint lacks an exact timeline of Field's protected activity and the adverse actions that purportedly resulted from this activity, her claims pass the plausibility stage for pleading purposes. For example, Field alleges that IDHR investigator Moen told Field, without justification, that her complaint would be dismissed as invalid if she continued to pursue her investigation against HACC. Am. Compl. ¶¶ 175–79. Additionally, Field alleges that IDHR unnecessarily prolonged

the investigation, a plausible result of Field's act of filing a lawsuit against IDHR under the ADA and § 504. *See id.* ¶¶ 173, 182, 185–92, 194–95. Accepted as true, Field's allegations suggest that IDHR interfered with her assertion of rights by taking actions that dissuaded Field from pursuing an investigation under the ADA and § 504. Thus, Field has plausibly pleaded that she suffered an adverse action as a result of protected activity.

IDHR's arguments to the contrary are unavailing. First, IDHR argues that any alleged coercion to persuade Field to withdraw her charge against HACC cannot qualify as an adverse action because the action is protected within the scope of litigation, as established in *Steffes v. Stepan Co.,* 144 F.3d 1070, 1075–76 (7th Cir. 1998). *See* Def.'s Mem. Supp. at 8. But IDHR's investigation does not fall within the scope of litigation contemplated in *Steffes,* which held that "conduct occurring within the scope of litigation" will rarely constitute retaliation because such conduct "falls within the unique duties of an advocate" and occurs "in the adversarial arena where opposing counsel and the trial court can quickly put the brakes on unethical or unlawful behavior." *Steffes,* 144 F.3d at 1075–76. IDHR's investigation had none of those qualities.

IDHR also raises an argument on reply that Field fails to assert a causal relationship between the protected activity and the adverse action. *See* Def.'s Reply at 3. But arguments raised for the first time in a reply brief are waived, *Mendez v. Perla Dental,* 646 F.3d 420, 423–24 (7th Cir. 2011). That said, it is established law that a plaintiff pursuing a retaliation claim does not need to allege a causal connection at the pleading stage. *Sanders v. Ill. Dep't of Cent. Mgmt. Servs.,* 593 F.

App'x 575, 577 (7th Cir. 2015) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013)).[13]

Field has plausibly pleaded an adverse action, and the motion to dismiss her retaliation claim under the ADA (Count XI) is denied.

### ii. Relief for Retaliation Under § 504

Next, IDHR argues that § 504 of the Rehabilitation Act, 29 U.S.C. § 794, only permits retaliation claims in an employment discrimination context, and therefore does not apply to Field's claim. Def.'s Mem. Supp. at 8. But, as Field points out, *see* Pls.' Resp. at 7–8, the Seventh Circuit has stated in *Reed v. Columbia St. Mary's Hospital* that the Rehabilitation Act "does not limit retaliation claims to the employment context." 782 F.3d 331, 337 (7th Cir. 2015).

In its reply, IDHR asserts that *Columbia St. Mary's Hospital* did not expressly address vicarious liability under Title II of the Rehabilitation Act. Def.'s Reply at 4. Again, arguments raised for the first time in a reply are deemed waived, *Mendez*, 646 F.3d at 423–24, but IDHR is incorrect in substance: the facts in *Columbia St. Mary's Hospital*, which the Seventh Circuit ruled stated a viable claim for retaliation under the Rehabilitation Act, were based on vicarious liability of an employer for the retaliatory acts of its employees. *See* 782 F.3d at 334, 337. Thus, Field may pursue

---

[13]     IDHR also devotes space to arguing against two other potential adverse actions—the removal of Hoffman from Field's housing voucher and IDHR's refusal of Field's request to use a communication aide, *see* Def.'s Mem. Supp. at 8—but neither of those actions were identified by Field as adverse actions. *See* Am. Compl. ¶¶ 313, 318.

a § 504 retaliation claim against IDHR, and the motion to dismiss Count XII is denied.

## III.    Count XV: Violation of Injunction in *Cooper v. Salazar*

Plaintiffs also allege that IDHR violated a court injunction by making credibility determinations during its investigation into Field's housing complaint against HACC. Am. Compl. ¶¶ 210–18, 349–50. The Illinois Human Rights Act, 775 Ill. Comp. Stat. Ann. 5/7A-102(D)(2), was amended in 1996 to permit IDHR to make credibility determinations during an investigation into whether there was substantial evidence of discrimination. But in 1999, the Northern District of Illinois granted a preliminary injunction against this practice, which had been challenged as violating procedural due process under the Fourteenth Amendment. *See Cooper v. Bombela*, 34 F. Supp. 2d 693 (N.D. Ill. 1999), *aff'd sub nom. Cooper v. Salazar*, 196 F.3d 809 (7th Cir. 1999). In subsequent litigation, the court "permanently enjoined [IDHR] from relying on any credibility determinations made without affording complainants an opportunity to confront and cross examine witnesses against them." *Cooper v. Salazar*, No. 98 C 2930, 2001 WL 1351121, at *6 (N.D. Ill. Nov. 1, 2001).

Plaintiffs allege that IDHR violated this injunction because it made credibility determinations in its decision to find no cause and dismiss Field's discrimination charge against HACC. Am. Compl. ¶¶ 210–18, 349–50. IDHR moves to dismiss Count XV on the grounds that IDHR did not make credibility determinations, but rather, relied on independent evidence to conclude that Field's complaint against HACC lacked substantial evidence. Def.'s Mem. Supp. at 10.

The Court does not reach IDHR's argument, however, because Plaintiffs lack standing to bring suit for violation of the injunction. The Court's "first task, as it is in every case, is to determine whether we have subject matter jurisdiction" over plaintiffs' claims, even if the parties do not raise jurisdiction as an issue. *Grinnell Mut. Reinsurance Co. v. Haight,* 697 F.3d 582, 584 (7th Cir. 2012); *see also Hay v. Ind. State Bd. of Tax Comm'rs,* 312 F.3d 876, 879 (7th Cir. 2002) ("[N]ot only may the federal courts police subject matter jurisdiction *sua sponte,* they must.").

As an order of a court, an injunction is enforceable through civil contempt proceedings. *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 547 F. Supp. 2d 879, 884–85 (N.D. Ill. 2008), *aff'd on other grounds*, 628 F.3d 837 (7th Cir. 2010). Such proceedings "are part of the action from which they stem." *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 920 (7th Cir. 1996). As a result, only plaintiffs who were party to the underlying suit or the intended beneficiary of the injunction can enforce an injunction. *See In re Suburban W. Props., LLC*, 504 B.R. 477, 486 (Bankr. N.D. Ill. 2013) ("In order for a third party to have standing to enforce an injunction, it must either be a party in the case in which the injunction was issued, or must have been the intended beneficiary of the injunction."); *see also Wang v. Gordon*, 715 F.2d 1187, 1190 (7th Cir. 1983) (stating that a court order "sought to be enforced by [a] nonparty [must have] be[en] made in favor of that [nonparty]" (citation omitted)); *Gautreaux v. Pierce*, 743 F.2d 526, 533 (7th Cir. 1984) (rejecting a third party's efforts to enforce a court order because the order was not entered for their benefit).

Plaintiffs have not pleaded that they are members of the class that was party to *Cooper v. Salazar*, nor that the injunction was made for Plaintiffs' benefit. Plaintiffs therefore lack standing to initiate a proceeding against IDHR for violating the injunction issued in *Cooper v. Salazar*. Accordingly, IDHR's motion to dismiss Count XV is granted.

## IV.    Prayer for Relief

Plaintiffs seek declaratory relief, punitive and compensatory damages, reasonable attorneys' fees and costs, and injunctive relief. *See* Am. Compl. at 55–56. IDHR moves to strike declaratory relief and certain aspects of the requested injunctive relief[14] from the Amended Complaint. Def.'s Mem. Supp. at 12–13.

A court may strike requests for relief when a complaint "seek[s] relief that is not recoverable as a matter of law." *FDIC for Valley Bank v. Crowe Horwath LLP*, No. 17 CV 04384, 2018 WL 1508485, at *2 (N.D. Ill. Mar. 27, 2018) (citing *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.,* 554 F.3d 1133, 1141–42 (7th Cir. 2009)). While a motion to strike is "usually discouraged," *Otero v. Dart*, No. 12 C 3148, 2012 WL 5077727, at *2 (N.D. Ill. Oct. 18, 2012), it "may be used to remove an excessive or unauthorized claim for damages," *Hrubec v. Nat'l R.R. Passenger Corp.*, 829 F. Supp. 1502, 1507 (N.D. Ill. 1993). The decision to strike material from the pleadings is within the district court's discretion, and the party moving to strike has the burden of showing that the plaintiff's claim is "devoid of merit, unworthy of

---

[14]    IDHR also moves to strike punitive damages from the Amended Complaint. Def.'s Mem. Supp. at 12. But this Court has since granted HACC's motion to strike the request for punitive damages. *See* Order of 1/17/2018, ECF No. 45. Accordingly, IDHR's motion to strike punitive damages is denied as moot.

consideration, and unduly prejudicial." *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003).

## A.    Declaratory Relief

In the Amended Complaint, Plaintiffs seek a declaration that IDHR violated the ADA and § 504.  Am. Compl. at 55.  IDHR asserts that declaratory relief is improper in this case because the alleged damages have already occurred.  Def.'s Mem. Supp. at 13.  In response, Plaintiffs argue that a motion to strike a prayer for relief is premature.  Pls.' Resp. at 15.

The Declaratory Judgment Act, 28 U.S.C. § 2201, permits declaratory relief "in any case of actual controversy . . . whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The primary purpose of the Act is to "avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994).  Courts have discretion over whether to hear a declaratory judgment claim, but "if the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed."  *Id.* at 578.  If traditional remedies are sufficient, however, courts may properly dismiss a declaratory judgment claim, and if the alleged damage has already occurred, declaratory judgment is not appropriate.  *Rothman v. City of Chi.*, No. 02 C 3533, 2003 WL 21148180, at *5 (N.D. Ill. May 16, 2003) (citing *Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165, 1167–68 (7th Cir. 1969)).

In the instant case, the requested declaration—that IDHR violated the ADA and § 504—concerns injuries that have already occurred, as IDHR's investigation of Field's charge against HACC concluded on June 20, 2017.  *See* Am. Compl. ¶¶ 192, 195, 300, 309, 314, 319, 330, 342.  Granting declaratory relief therefore would not prevent accrual of any avoidable damages.  What is more, a declaration that IDHR violated the ADA and § 504 would do nothing to clarify the legal relations between the parties for any future litigation because Field is already pursuing claims against IDHR under the ADA and § 504 in the instant lawsuit.  Accordingly, IDHR's motion to strike declaratory relief is granted.

### B.     Injunctive Relief

In the Amended Complaint, Plaintiffs ask the Court to order IDHR to (a) designate and publicize an ADA coordinator; (b) update its ADA and § 504 compliance plan; and (c) cease receiving referrals from HUD to investigate housing complaints under the Fair Housing Assistance Program.  Am. Compl. at 56.  IDHR challenges the validity of the first and third requests on the merits.

The Court declines to reach IDHR's arguments, however, because "[a] defendant's motion to strike a prayer for relief is premature if such relief is provided for by law."  *Jumpfly, Inc. v. Torling*, No. 10 C 0385, 2010 WL 1978732, at *4 (N.D. Ill. May 17, 2010).  As discussed above, Field states claims under the ADA and § 504 of the Rehabilitation Act, and both statutes provide for injunctive relief.  *See* 42 U.S.C. § 12133 (mirroring remedies under § 504); 29 U.S.C. § 794a(a)(2) (incorporating remedies available under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d-7); 42 U.S.C. § 2000d-7 (permitting both legal and equitable remedies).  Thus, because Field

has stated claims under Title II and § 504, and injunctive relief is provided for by law in both statutes, striking her prayer for injunctive relief at this stage would be premature. *See Jumpfly*, 2010 WL 1978732, at *4.

Accordingly, IDHR's motion to strike Plaintiffs' request for injunctive relief is denied.

## Conclusion

For the reasons stated herein, the Court grants in part and denies in part IDHR's motion to dismiss [41] Plaintiffs' Amended Complaint. IDHR's motion to dismiss Count XV is granted, as is the motion to dismiss Counts IX–XIV only as to Hoffman. In all other respects, IDHR's motion to dismiss is denied. IDHR's motion to strike is granted as to Plaintiffs' request for declaratory relief, but is denied in all other respects.

**IT IS SO ORDERED.**     **ENTERED**     8/13/18

_____
**John Z. Lee**
**United States District Judge**